UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BOBBY MCNEIL,

                Plaintiff,

v.                                              Case No. 24-cv-756-pp

SHAWN TOMS, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (DKT. NO. 4) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

       Plaintiff Bobby McNeil, who is incarcerated at the Milwaukee County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants used excessive force in violation of his civil rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, and for appointment of counsel, dkt. no. 4, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On June 20, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $16.47. Dkt. No. 6. The court received that fee on July 11, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Milwaukee Police Officers Shawn Toms and Micheal Weiland. Dkt. No. 1 at 1–2. The plaintiff alleges that on an unspecified day, the officers "jump[ed] out on [the plaintiff] with their 'guns' in th[eir] hands, pointed at [him]." Id. at 3. The plaintiff says that he was unarmed and "scared for [his] life," so he started to run "because police is [*sic*] known to just shoot and kill people." Id. The plaintiff says that he ran to the porch of a nearby house for his safety. Id. When he looked back, "Officer Weiland had his weapon [pointed] at [the plaintiff]," so the plaintiff jumped over the side of the porch and tried to go inside. Id. The plaintiff says the door was locked, and he could not "get in to protect [him]self." Id.

The plaintiff alleges that Weiland then "fired his weapon," striking the plaintiff in his arm and around his mouth. Id. He says the weapon was a taser, and he felt its effects after he "landed on the ground and started to go up the driveway area of this house." Id. at 3–4. The plaintiff says the taser slowed his

3
Case 2:24-cv-00756-PP    Filed 08/22/24    Page 3 of 13    Document 8

walking, and Officer Toms ran past him "and got in front of" him. Id. at 4. He says Toms "place[d] his taser against [the plaintiff's] mouth and stung [him]." Id. Toms allegedly again tased the plaintiff in the back when he "drift[ed] off to the right." Id. The plaintiff says that the officers' body cameras recorded the events. Id.

The plaintiff asserts that the officers acted "vindictive" and used him "as target practice." Id. He alleges that "[t]here was no reason to get violent towards [him]" because he had "stop[ped] running." Id. He claims that the officers used unreasonable and excessive force because he "was not fighting with them" or "resisting." Id. He says the officers could have "just grab[bed]" him and taken him "down to the ground, without using th[eir] weapons." Id. He alleges that he fell unconscious from the tasers and was in a coma for three or four days at a hospital. Id. He says that his face is "burned up from the flam[e] of the taser." Id. The plaintiff attached black-and-white photos of his injuries; the photos are poor quality but appear to show burn marks above, below and on the plaintiff's lips and mouth. Dkt. No. 1-1. The plaintiff alleges that "the police" removed him from handcuffs while he was unconscious at the hospital and did not arrest him, so he "was able to leave and go home." Dkt. No. 1 at 4.

The plaintiff seeks $25 million in damages for the "mental, physical and emotional abuse/stress" that he endured. Id. at 5. He says he has been harassed because of the scars on his face, and looking at the scars in the mirror gives him "flash backs" to the day of the events. Id. He also asks that the officers be disciplined "to clearly show when they do wrong, they can also be punish[ed]." Id.

4

C.  Analysis

The court analyzes the plaintiff's allegations under the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. Graham v. Connor, 490 U.S. 386, 394 (1989); see Tennessee v. Garner, 471 U.S. 1, 7–8 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). Under the Fourth Amendment, the court applies an objective reasonableness test, considering the reasonableness of the force based on the events confronting the defendants at the time and not on their subjective beliefs or motivations. See Horton v. Pobjecky, 883 F.3d 941, 949–50 (7th Cir. 2018) (citing Graham, 490 U.S. at 396–97; County of Los Angeles v. Mendez, 581 U.S. 420, 426–27 (2017)). The court must consider "the totality of the circumstances, including the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances," without resort to "hindsight's distorting lens." Id. at 950 (citing Graham, 490 U.S. at 396; Ford v. Childers, 855 F.2d 1271, 1276 (7th Cir. 1988)).

The plaintiff alleges that on an unspecified day, the two officers approached him from their police car with guns drawn. He says he was unarmed and scared that the officers might shoot and kill him. The plaintiff says he ran for his safety, but the officers caught up to him and used their tasers on him. He says they deployed one taser that hit him in the arm and mouth, and then used a taser directly against the plaintiff's mouth and back. The plaintiff says he was not threatening violence against the officers or resisting arrest, but he also says that he ran when the officers first approached him. He says that these events have left him with scarring around his mouth that causes him harassment and flashbacks of the event.

5

Although the plaintiff does not say why the officers first approached him with their guns drawn, he says that he ran from them out of fear and a concern for his safety. The fact that the plaintiff ran may have justified the officers giving chase or using some degree of force. See generally Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 724–733 (7th Cir. 2013). But it may have been unnecessary for the officers to use the tasers in the way that the plaintiff alleges. For example, if the first taser slowed down the plaintiff's running as he alleges, then it may not have been necessary to use a second taser at point blank range on the plaintiff's face or back. See id. at 729–31. Accepting the allegations in the complaint as true for purposes of screening, the court finds that the plaintiff has alleged sufficient facts to state a claim of excessive force against the officers for the way that they used their tasers while subduing him as alleged in the complaint.

The plaintiff seeks damages and discipline against the officers involved. The court will allow him to proceed on his Fourth Amendment claim for damages. But the court does not have the authority to order the Milwaukee Police Department to discipline the officers. If he is intent on seeking that relief, the plaintiff may file a complaint with the Milwaukee Police Department against the officers, but in this federal lawsuit, he may proceed only on his claim for damages.

As a final note, the plaintiff has pending state court charges. A plea/sentencing hearing is scheduled for September 13, 2024. See State v. McNeil, Milwaukee County Case Number 2021CF4115, available at https://wcca.wicourts.gov/. It is unclear whether these charges are related to the plaintiff's civil claim; he says that he was not arrested after he fell unconscious and "was able to leave and go home" from the hospital. But the plaintiff also

6

Case 2:24-cv-00756-PP   Filed 08/22/24   Page 6 of 13   Document 8

says in his motion for appointment of counsel that it has taken him "to [his] (3) year deadline to get this far." Dkt. No. 4. The criminal complaint in his state case was filed in September 2021, and he brought this civil case in June 2024. The two cases could be related; he may have filed this federal case just ahead of his three-year limitation period.

Because it is not clear whether the events alleged in the plaintiff's complaint are related to his arrest and pending sentencing, the court will not stay the federal proceedings pending the conclusion of the plaintiff's state court criminal case. But if the parties later inform the court that the two cases are related, the court may stay this case until the plaintiff's criminal and appellate proceedings have concluded. See Gakuba v. O'Brien, 711 F.3d 751, 753 (7th Cir. 2013) (noting that under Younger v. Harris, 401 U.S. 37 (1971), "federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with ongoing state proceedings").

### III. Motion for Appointment of Counsel (Dkt. No. 4)

The plaintiff asks the court to appoint a lawyer to represent him in this federal lawsuit. Dkt. No. 4. He says his case is "very complexity [*sic*]," and he has been unable to obtain counsel on his own. Id. He says that "numerous" attorneys have denied his request for their help, and he attached four letters from attorneys or firms declining to take his case. Dkt. No. 4-1. The plaintiff says that he cannot litigate this case on his own because he suffers from short-term memory loss, anxiety, attention deficit hyperactivity disorder "and numerous of [*sic*] other mental health issues." Dkt. No. 4. He says he also suffers from seizures from being tased as alleged in his complaint. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th

7
Case 2:24-cv-00756-PP   Filed 08/22/24   Page 7 of 13   Document 8

Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court

should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has satisfied the first of these inquiries. He says he contacted multiple attorneys or firms asking them to take his case, but none of them have agreed to help him. He attached four letters that he received from these attorneys or firms declining to represent him. None of those letters

comment on the merits of the plaintiff's case or a pay structure and instead tell him that they do not have the resources or interest in taking his case.

But the plaintiff has not satisfied the second criteria for court-assisted recruitment of counsel. The court understands the plaintiff's concern about litigating this case given his alleged mental and physical health issues. But as the court explained above, there simply are not enough attorneys willing and able to represent all *pro se* litigants who request the assistance of counsel. The plaintiff's claim is very straight-forward. He alleges that two officers used unreasonable and excessive force on him when he was not threatening violence or resisting arrest. The complaint shows that he has a strong recollection of the events in question, and he even has photographic evidence of the injuries that he says he sustained during the events. As the court explained, it also is possible that the court will need to stay this case pending the conclusion of the plaintiff's state-court proceedings, including any appeals that he decides to file. It would not be appropriate to recruit counsel before the court knows whether it will need to stay this federal case for an indefinite amount of time.

Given these circumstances, and because it is very early in the proceedings, the court cannot determine whether the plaintiff requires the assistance of counsel to litigate his claims adequately. As the case progresses, the legal and factual issues may become too complex for the plaintiff, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. If any of those things happen, it may be appropriate to recruit counsel to represent the plaintiff. But at this early stage of the proceedings, the court finds it impossible to tell whether the plaintiff requires the assistance of counsel to present his case. The court will deny his motion for the appointment of counsel without prejudice.

10

Case 2:24-cv-00756-PP    Filed 08/22/24    Page 10 of 13    Document 8

That means he may later request the court's assistance in recruiting an attorney for him if he maintains that he is incapable of litigating this case adequately on his own.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for appointment of counsel. Dkt. No. 4.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Shawn Toms and Micheal Weiland of the Milwaukee Police Department under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$316.53** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Office of the Sheriff, Fiscal Operations, Rm 224, 821 W. State Street, Milwaukee, WI 53233.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 22nd day of August, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**